GAFFER INSURANCE COMPANY,
LTD., Murray Insurance Agency, Inc.,
Kelly–Murray Insurance Agency, Inc.,
Brian J. Murray, Christine M. Oliver
Shean and Douglas J. Murray, Appellee

v.

DISCOVER REINSURANCE COMPANY, United States Fidelity and Guaranty Company and The St. Paul Travelers Companies, Inc., Appellants.

Superior Court of Pennsylvania.

Argued March 14, 2007.

Filed Nov. 16, 2007.

Sean R. Sullivan, Philadelphia, for appellants.

George A. Reihner, Scranton, for appellees.

BEFORE: STEVENS, KLEIN, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellants, Discover Reinsurance Company ("Discover"), United States Fidelity and Guaranty Company, and the St. Paul Travelers Companies, Inc., appeal from the order of the trial court denying preliminary objections that sought to compel arbitration in a dispute with Appellees, Gaffer Insurance Company, Ltd. ("Gaffer"), Murray Insurance Agency, Inc., Kelly–Murray Insurance Agency, Inc., Brian J. Murray, Christine M. Oliver Shean, and Douglas J. Murray.[1] The issue presented is one of contract interpretation: whether a service of suit/consent to jurisdiction provision overrides an agreement to submit disputes to arbitration. Following thorough review, we conclude that it does not, and accordingly we reverse.[2]

¶ 2 The relevant facts and procedural history underlying the instant case are as follows. In May 1997, the principals of Murray Insurance Agency, specifically Brian J. Murray, Christine M. Oliver Shean, and Douglas J. Murray, formed a captive insurance company called Gaffer Insurance Company, Ltd. Shortly thereafter, Gaffer entered into a captive reinsurance agreement (hereinafter the "Agreement") with Discover, whereby Gaffer agreed to reinsure certain policies that were solicited and sold by the Murray Agency or the Kelly–Murray Agency, issued by United States Fidelity and Guaranty Company or

---

1. The parties are as follows: Gaffer Insurance Company, Ltd. is a foreign business corporation organized under the laws of the British Virgin Islands. Murray Agency, Inc. and Kelly–Murray Insurance Agency, Inc. are domestic business corporations organized under the laws of Pennsylvania and Maryland, respectively. Discover Reinsurance Company is a domestic business corporation organized under the laws of Indiana and is a wholly-owned subsidiary of United States Fidelity and Guaranty Company, which is organized under the laws of Maryland and is a wholly-owned sub-

sidiary of The St. Paul Travelers Companies, Inc., which is organized under the laws of Minnesota.

2. This appeal is properly before us as an interlocutory appeal as of right pursuant to 42 Pa.C.S.A. § 7320(a)(1) and Pa.R.A.P. 311(a)(9). *See Thibodeau v. Comcast Corp.,* 912 A.2d 874, 877 n. 2 (Pa.Super.2006); *Levy v. Lenenberg,* 795 A.2d 419, 421–22 (Pa.Super.2002).

its subsidiaries, and reinsured by Discover.[3]

¶ 3 The Agreement required Gaffer to produce collateral, one form of which was an irrevocable letter of credit to Discover, to secure its reinsurance obligations. Because Gaffer's obligations were not fixed, the Agreement provided for adjustments in the amount of collateral required from Gaffer.

¶ 4 In May 2003, Gaffer terminated its relationship with Discover. Pursuant to the terms of the Agreement, although the Gaffer–Discover relationship had been terminated, Gaffer was required to keep an appropriate amount of collateral in force either until all covered claims had been closed or until three years after the last covered claim was reported. Gaffer maintains that as outstanding claims were paid, settled, or otherwise resolved, Gaffer's reinsurance obligations decreased and the required collateral should also have decreased. The current dispute centers on Gaffer's allegation that, following Gaffer's request to release some of its letters of credit to reflect its decreased obligations, Discover refused to do so.

¶ 5 Gaffer filed a complaint against Discover on May 2, 2005, alleging, *inter alia,* breach of contract and unjust enrichment.[4] Discover filed preliminary objections to the complaint, contending that the court lacked jurisdiction over the matter because the parties had agreed to arbitrate their disputes, and thus seeking to compel arbitration.[5] For its argument, Discover relied upon Article 19 in the Agreement, which reads in relevant part:

## ARTICLE 19

### ARBITRATION

Any dispute between the parties to this Agreement will be submitted for decision of a board of arbitration composed of two arbitrators and an umpire, meeting in Farmington, CT, unless otherwise agreed to by us and you.

(Agreement, dated January 21, 1998, Article 19, p. 14).[6]

3. The trial court defined the concept of reinsurance as follows:

> "Reinsurance" refers to an undertaking where one insurer agrees to protect another insurer, known as the reinsured, either wholly or partially, from a risk that it has undertaken; both policies are in effect at the same time. When reinsurance occurs, the reinsured, which is also known as the ceding company, cedes to the reinsurer all or a portion of its risks for a stipulated portion of the premium.

(Trial Court Memorandum Opinion and Order, dated May 22, 2006, at 2–3 (quoting 14A Summ.Pa.Jur.2d Insurance § 25:1)); *see also Reid v. Ruffin,* 503 Pa. 458, 464, 469 A.2d 1030, 1033 (1983).

4. The breach of contract claim was brought solely by Gaffer against only one party, Discover. The unjust enrichment claim was brought by all of the Appellees against all three of the Appellants. The complaint also included two other claims: a third-party beneficiary claim brought by the Murray Agency, Brian and Douglas Murray, and Christine M. Oliver Shean against Discover, and a conversion claim brought by Gaffer, the Murray Agency, Brian and Douglas Murray, and Christine M. Oliver Shean against all three Appellants.

5. Discover filed its preliminary objections seeking to compel arbitration pursuant to Pa. R.C.P. 1028(a)(1) ("lack of jurisdiction over the subject matter"). Our decisional law has made clear that the issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the court. *Smith v. Cumberland Group, Ltd.,* 455 Pa.Super. 276, 687 A.2d 1167, 1171 (1997).

6. The remainder of Article 19 describes the procedures for initiation of arbitration, appointment of the board of arbitrators, submission of briefs, issuance of the board's decision, and allocation of costs.

¶ 6 Gaffer, on the other hand, argued that, the arbitration provision notwithstanding, the parties were *not* required to submit their dispute to arbitration because of another article in the Agreement, a service of suit/consent to jurisdiction provision, which reads in relevant part as follows:

### ARTICLE 17

SERVICE OF SUIT

This Article applies only to a reinsurer domiciled outside the United States of America. . . .

It is agreed that in the event of [Gaffer's] failure to pay any amount claimed to be due hereunder, [Gaffer] at [Discover's] request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. *Nothing in the Article constitutes or should be understood to constitute a waiver of [Gaffer's] rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States district court or to seek a transfer of a case to another court as determined by the laws of the United States or of any state in the United States.*

It is further agreed that service of process in such suit may be made upon Gaffer Insurance Company, Ltd, c/o Murray Insurance Agency, 415 Spruce Street, Scranton, PA 18501, attention Chris Oliver and that in any suit instituted against [Gaffer] upon this Agreement, you will abide by the final decision of such court or of an appellate court in the event of an appeal.

(Agreement, Article 17, p. 13) (emphasis added).

¶ 7 Gaffer argued that the service of suit provision prevailed over the arbitration provision because the latter contained a qualifying phrase: "unless otherwise agreed to by [Discover] and [Gaffer]." In Gaffer's view, the service of suit provision demonstrated that the parties had already "otherwise agreed" to settle their disputes in court, and thus the arbitration provision had been rendered merely permissive. Accepting Gaffer's argument, the trial court held that the parties were not required by the Agreement to arbitrate their dispute.

¶ 8 Discover filed a timely appeal, raising one issue for our review:

1. Did the trial court err by overruling Discover Reinsurance Company's preliminary objections seeking to compel arbitration and holding that the service of suit clause contravened the parties' agreement to arbitrate?

(Appellants' Brief at 4).[7]

 ¶ 9 "Our review of a claim that the trial court improperly denied [the] appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Midomo Company, Inc. v. Presbyterian Housing Development Company,* 739 A.2d 180, 186 (Pa.Super.1999). In the instant case, the issue presented—whether under the terms of the Agreement the parties are required to submit their dispute to arbitration—is strictly one of contract interpretation. No relevant facts are in dispute. Because contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our

---

7. We note that there is no question—and indeed no question was presented or argued—that if the parties have an agreement to arbitrate, the specific financial dispute that precipitated the instant case falls within the scope of that agreement.

scope is plenary. *Bucks Orthopaedic Surgery Associates, P.C. v. Ruth,* 925 A.2d 868, 871 (Pa.Super.2007); *Highmark Inc. v. Hospital Service Association of Northeastern Pennsylvania,* 785 A.2d 93, 98 (Pa.Super.2001).

■■■ ¶ 10 We first consider several general principles of contract interpretation:

> When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. In construing a contract, we must determine the intent of the parties and give effect to all of the provisions therein. An interpretation will not be given to one part of the contract which will annul another part of it.

*Capek v. Devito,* 564 Pa. 267, 273–74, 767 A.2d 1047, 1050 (2001) (citations and quotation marks omitted). We emphasize that the contract must be interpreted as a whole, and an interpretation that gives effect to all of the contract's provisions is preferred. *Midomo, supra* at 191; *Emlenton Area Municipal Authority v. Miles,* 378 Pa.Super. 303, 548 A.2d 623, 626 (1988). In addition, a preferred contract interpretation ascribes under all circumstances "the most reasonable, probable, and natural conduct to the parties." *Midomo, supra* at 191; see also *Emlenton, supra* at 626 (same).

¶ 11 Although arbitration cannot be compelled in the absence of an express agreement to arbitrate, *Emlenton, supra* at 625, our Commonwealth's well-established public policy favors arbitration:

> It is unquestioned that arbitration is a process favored today in this Commonwealth to resolve disputes. By now it has become well established that settlement of disputes by arbitration [is] no longer deemed contrary to public policy.

In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested, arbitration is favored by the courts.

*Huegel v. Mifflin Construction Co., Inc.,* 796 A.2d 350, 358 (Pa.Super.2002) (quoting *Commonwealth, Office of Administration v. Pennsylvania Labor Relations Board,* 528 Pa. 472, 480, 598 A.2d 1274, 1277–78 (1991)).

¶ 12 Our Commonwealth's general policy toward arbitration is consistent with federal policy, as set forth in the Federal Arbitration Act,[8] which applies to written arbitration agreements that are "part of a contract evidencing a transaction involving interstate commerce." *Thibodeau v. Comcast Corp.,* 912 A.2d 874, 878, 880 (Pa.Super.2006) (quoting the Federal Arbitration Act, 9 U.S.C. § 2); *Dickler v. Shearson Lehman Hutton, Inc.,* 408 Pa.Super. 286, 596 A.2d 860, 862 (1991). As explained by the United States Supreme Court, "Section 2 [of the Federal Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoted in *Dickler, supra* at 862).

¶ 13 Notwithstanding this favorable federal policy towards arbitration agreements,

> [the Federal Arbitration Act] does not require parties to arbitrate when they have not agreed to do so. The purpose of Congress in 1925 [in passing the Federal Arbitration Act] was to make arbitration agreements as enforceable as other contracts, but not more so. Because the Federal Arbitration Act is at bottom a policy guaranteeing the enforcement of private contractual arrangements, we look first to whether the

_____

8. 9 U.S.C. §§ 1–14.

parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of an agreement. While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.

*E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 293–94, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (internal citations and quotation marks omitted).

■ ¶ 14 This Court has recently considered the interplay between state law and the Federal Arbitration Act as to the issue of whether the parties to a dispute had entered into a valid and enforceable agreement to arbitrate. *See Thibodeau, supra.* The *Thibodeau* panel concluded that the Federal Arbitration Act had not been designed to preempt all state law related to arbitration. *Id.* at 879–80; *see also Trombetta v. Raymond James Financial Services, Inc.,* 907 A.2d 550, 564 (Pa.Super.2006) (stating that the Federal Arbitration Act "does not reflect a Congressional intent to occupy the entire field of arbitration"). Rather, when addressing the "specific issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." *Thibodeau, supra* at 878 (citations and quotations marks omitted). In effect, "state contract law doctrines become part of the federal law of arbitrability." *Id.* at 880.

■ ¶ 15 Relying on the above concepts, the *Thibodeau* panel applied general principles of Pennsylvania contract law to affirm the trial court's ruling that an arbitration provision governed by the Federal

Arbitration Act was unconscionable and unenforceable. *Id.; accord, Lytle v. CitiFinancial Services, Inc.,* 810 A.2d 643, 656 (Pa.Super.2002), *abrogated on other grounds by Salley v. Option One Mortgage Corp.,* 592 Pa. 323, 925 A.2d 115, 129 (2007) ("Pennsylvania law on the enforceability of agreements to arbitrate is in accord with federal law and requires enforcement of arbitration provisions as written, permitting such provisions to be set aside only for generally recognized contract defenses such as duress, illegality, fraud, unconscionability."). Thus, regardless of whether the contract is governed by federal or state arbitration law, we apply general principles of Pennsylvania contract law to interpret the parties' agreement. *See Thibodeau, supra.*

■ ¶ 16 We turn now to interpretation of the Agreement. We note first that Article 19 of the Agreement constitutes a very broad arbitration provision: "*Any* dispute … *will be submitted* for decision of a board of arbitration … unless otherwise agreed to by us and you." (Agreement, Article 19, p. 14). The verb is mandatory—"*will be* submitted"—and is qualified *only* by one clause allowing for an alternative to mandatory arbitration *only* upon mutual agreement. Thus, by the plain and unambiguous text of this provision, the parties agreed to broad arbitration and expressly provided that mutual agreement would be required to avoid the mandate to arbitrate their disputes.

¶ 17 However, in Gaffer's view, this plain meaning of the arbitration provision has been eviscerated by the inclusion of the service of suit provision in the Agreement. Gaffer focuses on the limiting clause in the arbitration provision—"unless otherwise agreed to by [Discover] and [Gaffer]"—and insists that by incorporating the service of suit provision into the Agreement,

the parties *did* "otherwise agree" to abandon arbitration as the mandatory mechanism for resolving disputes. Gaffer's interpretation diminishes the force of the arbitration provision from *mandating* arbitration, unless both parties agree, to merely *permitting* arbitration, so long as both parties agree to arbitrate.

¶ 18 We cannot accept Gaffer's reading of the Agreement because it violates a basic principle of contract interpretation: consider the contract as a whole and give effect to every provision if possible. Gaffer's reading renders the arbitration provision purposeless, meaningless, and superfluous. There is no logical need for a provision that merely allows the parties to agree to arbitrate, as nothing in the Agreement remotely implies that the parties could not agree to do so. The parties could mutually agree to arbitrate a dispute just as easily in the absence as in the presence of any such provision. Thus, there is no logical or rational explanation for a contractual provision that has the meaning that Gaffer here proposes for the arbitration provision.

¶ 19 Contrary to Gaffer's contention, the service of suit provision is *not* rendered meaningless if the arbitration provision is interpreted as a broad mandate to settle disputes by arbitration. The service of suit provision is also a consent to jurisdiction provision, and it requires Gaffer, as a foreign corporation, to "submit to the jurisdiction of a court of competent jurisdiction within the United States," in the event that Gaffer fails to pay an amount claimed by Discover under the Agreement. (Agreement, Article 17, p. 13). In the very next sentence, the service of suit provision states that "[n]othing in the Article [*i.e.,* the service of suit Article] constitutes or should be understood to constitute a waiver of [Gaffer's] rights to commence an action in any court of competent jurisdic-

tion in the United States...." (Agreement, Article 17, p. 13). These provisions are entirely compatible with the arbitration provision when one recognizes that mandating arbitration as the mechanism for resolving disputes does *not* eliminate the possibility that the parties may *in addition* rely on the courts in some situations, *e.g.,* to file actions to compel or enforce arbitration. In addition, under the plain meaning of the arbitration provision discussed above, if both parties mutually agree *not* to arbitrate a dispute, a remaining option is to resolve the dispute in court.

¶ 20 There is no inherent conflict or inconsistency between the service of suit provision and the arbitration provision. Both can—and therefore, under the principles of contract interpretation, should—be given full and logical effect. We do not perceive any need to eviscerate the arbitration provision in order to give effect to the directives of the service of suit provision.

¶ 21 In its argument to the contrary, Gaffer focuses on the third sentence of the service of suit provision, which provides in relevant part the following: "Nothing in the Article constitutes ... a waiver of [Gaffer's] rights to commence an action in any court of competent jurisdiction in the United States...." (Agreement, Article 17, p. 13). Gaffer insists that this sentence confers upon it the right to disregard the arbitration provision and seek judicial resolution of any dispute with Discover. We disagree. By the plain meaning of this sentence, *no* rights are conferred upon Gaffer or anyone else; the sentence merely addresses *waiver* of rights. The plain meaning of the sentence is unambiguous: by agreeing to the service of suit article, which encompasses consent to jurisdiction and service of process, Gaffer did not waive any rights that it might have to

initiate its own action in court. The sentence does *not* address the scope or breadth of Gaffer's rights, and it does not even remotely imply that Gaffer's rights to sue cannot be limited by some other article in the Agreement, as indeed they are by the arbitration provision. Gaffer's broad reading of the sentence to re-confer rights relinquished in the arbitration clause is inconsistent with the plain meaning of the text. Accordingly, we firmly reject Gaffer's view.

¶ 22 We conclude that it is not only possible, but also most reasonable and logical to consider the Agreement as a consistent whole and give full effect to both the arbitration and the service of suit/consent to jurisdiction provisions. Although we resolve this dispute based on basic principles of contract interpretation, as delineated by decisional law in this Commonwealth, we also note that courts in other jurisdictions have arrived at similar resolutions when faced with factually similar disputes. *See Patten Securities Corp., Inc. v. Diamond Greyhound & Genetics, Inc.,* 819 F.2d 400, 407, n. 3 (3d Cir.1987), *abrogation on other grounds recognized by Delgrosso v. Spang and Co.,* 903 F.2d 234, 236 n. 2 (3d Cir.1990) (concluding in an application of federal law, that an arbitration clause and a forum selection/consent to jurisdiction clause could both be given effect, because arbitration awards are not self-enforceable and thus the forum selection/consent to jurisdiction clause would appear to dictate the location of any action to enforce the award); *Bank Julius Baer & Co., LTD. v. Waxfield LTD.,* 424 F.3d 278, 284–85 (2d Cir.2005) (holding, in a case factually similar to *Patten Securities,* that a forum selection/consent to jurisdiction clause should be understood as complementary to an agreement to arbitrate); *Security Life Insurance Company of America v. Hannover Life Reassurance Company,* 167 F.Supp.2d 1086, 1088–89 (D.Minn.2001) (applying federal law and concluding that an arbitration clause could be read in harmony with a service of suit/consent to jurisdiction clause because it "is well-established that such service of suit clauses do not abridge an agreement to arbitrate all disputes arising out of a relationship. . . . The reason for service of suit clauses is not to limit the arbitrability of claims, but to obviate potential problems with obtaining jurisdiction over the parties."); *Johnston County, N.C. v. R.N. Rouse & Co., Inc.,* 331 N.C. 88, 414 S.E.2d 30, 34 (1992) (applying North Carolina law to the interpretation of a construction contract and concluding that the consent to jurisdiction clause did not in any way constrain the plain meaning of the mandatory arbitration clause).

¶ 23 Finally, in *Internet East, Inc. v. Duro Communications, Inc.,* 146 N.C.App. 401, 553 S.E.2d 84 (2001), a North Carolina appellate court considered whether an agreement to arbitrate, which contained a limiting clause similar to that in the instant case, was eviscerated by a forum selection clause. The arbitration provision read as follows:

> *Unless the parties shall agree otherwise,* all claims, disputes and other matters . . . shall be decided by arbitration. . . ."

*Id.* at 86, 87 (emphasis added).

The forum selection provision provided that

> the State courts of North Carolina shall have sole jurisdiction over any disputes which arise under this agreement. . . .

*Id.* at 86.

¶ 24 The *Internet East* appellees argued, similarly to Gaffer in the instant case, that the inclusion of the forum selection provision in their agreement indicated that the parties had thereby *already otherwise* agreed to settle their disputes solely in the state courts, thus removing all force from

the arbitration provision and rendering it merely permissive. *Id.* at 87. The court declined to accept this argument, concluding that a more logical interpretation would give effect to both the arbitration provision and the forum selection provision. *Id.* at 87–88.

¶ 25 Although the cases discussed above are not factually identical to the instant case [9] and are not controlling, we find their reasoning persuasive. Like the courts in other jurisdictions, we conclude that there is no inherent incompatibility between an arbitration provision and a service of suit/consent to jurisdiction provision. In the Agreement at issue, both can rationally and logically be given effect. We reject Gaffer's interpretation as contrary to the plain meaning of the text of the Agreement as a whole. Accordingly, we conclude that the trial court committed an error of law, and we reverse the order of the trial court denying Discover's preliminary objection to compel arbitration.

¶ 26 Order reversed. Case remanded to the Court of Common Pleas of Lackawanna County with instructions to enter an order granting Discover's preliminary objections in the nature of a motion to compel arbitration. Jurisdiction relinquished.

---

**9.** We recognize that none of the cited cases addresses a provision containing the sentence on which Gaffer strongly relies ("Nothing in the Article constitutes … a waiver of [Gaffer's] rights to commence an action in any court of competent jurisdiction in the United States…."). (Agreement, Article 17, p. 13). For the reasons explained in the text, *supra,* we do not accept Gaffer's argument that this sentence should be ascribed the broad significance favored by Gaffer.