NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2739
_____

ALDER RUN LAND, LP; ORRIN L. FRENCH, as trustee of the Schoonover
Real Estate Trust; JEFFREY A. DALKE, as trustee of the Schoonover Real Estate
Trust; CATHERINE G. ANDERSON, as trustee of the Catherine G. Anderson;
DAVID K. DAHLGREN; MARJORIE DAHLGREN, husband and wife; BONNIE
LOU DAHLGREN PETERS; TERRY PETERS, wife and husband,
                                                        Appellants

v.

NORTHEAST NATURAL ENERGY LLC

_____

On Appeal from the District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-13-cv-00222)
District Judge: Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 13, 2015

Before: MCKEE, Chief Judge, HARDIMAN, and SCIRICA, Circuit Judges

(Filed: August 10, 2015)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Appellants-Plaintiffs (collectively, "Schoonover") brought suit against Northeast Natural Energy LLC ("Northeast") alleging that Northeast refused to honor its agreement to enter into certain oil and gas leases. The District Court, finding that Northeast's agreement to purchase such leases arose under earlier oil and gas leases that contained broad arbitration provisions, dismissed the claim and ordered the parties to arbitrate their dispute. Schoonover appeals, and we will affirm.

## I.

In three separate but essentially identical leases (the "2010 Leases"), Schoonover granted East Resources, Inc., the right to produce oil and gas from approximately 1,800 acres of Schoonover's property. The 2010 Leases indisputably contained an arbitration provision that provided: "Any issue, item or disagreement between Lessor and Lessee concerning this lease or performance there under shall be ascertained and determined by three disinterested arbitrators . . . ." Shortly after the 2010 Leases were executed, SWEPI, L.P., acquired East Resources and accordingly became the lessee thereunder. In the spring of 2011, Northeast sought to acquire certain oil and gas interests from SWEPI, including the 2010 Leases. But before doing so, Northeast required certain amendments to the 2010 Leases. Negotiations between Schoonover, Northeast, and SWEPI produced two sets of documents: the Letter Agreements, dated April 28, 2011, between Schoonover and Northeast; and the 2010 Lease Amendments, dated May 4, 2011, between Schoonover and SWEPI, the then-current lessee under the 2010 Leases.

2

Northeast eventually acquired the 2010 Leases as amended from SWEPI.

The Letter Agreements between Northeast and Schoonover are central to this dispute. The Letter Agreements are three separate but nearly identical agreements which define the 2010 Leases as the "Underlying Lease" (and refer to them as such eleven times). Each Letter Agreement states:

> Should Northeast acquire an Assignment of . . . the Underlying Lease, then the parties hereto specifically agree that the Underlying Lease shall be subject to the following conditions:
>
> * * *
>
> 3. For a period of eighteen (18) months from the date Northeast acquires the East Resources Leases, Northeast agrees to lease from the Lessor any additional oil and gas fee interests that may be acquired or identified and available to be leased by the Lessor and that are part of or contiguous to lands covered by the East Resources Leases . . . *upon the same terms and conditions as set forth in the Underlying Lease*, with the exception that the delay rental for the primary lease term of five (5) years will be a one-time payment of $2,000 per acre.

(emphasis added). Paragraphs 1 and 2 set forth two additional conditions regarding a potential transfer of the 2010 Leases by Northeast, and paragraphs 4-9 set out typical contract terms such as choice of law and severability. In particular, paragraph 4 is an integration clause stating "This Agreement constitutes the entire contract between the parties . . . ."

In April 2012, Northeast surrendered the 2010 Leases in accordance with their terms. But considering the Letter Agreements to still be in effect despite the surrender, Schoonover tendered 2,200 acres of oil and gas interests which Northeast refused to accept. Schoonover then brought suit on September 25, 2013, claiming breach of

3

paragraph 3 of the Letter Agreements. The District Court determined that "[w]ithout reference to the 2010 Leases, the Letter Agreements are incomplete and essentially meaningless," and thus must be read together. Accordingly, the court ordered the case to be resolved through arbitration and this timely appeal followed.

## II.

"'We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate,' and we are first obliged to determine which standard should have been applied [by the District Court]." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010)) (citation omitted). "Review of the district court's construction of a contract is . . . plenary." *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 102 (3d Cir. 1986).[1]

## III.

The parties agree that arbitration is a question of contract and that Pennsylvania law should be applied "to interpret the parties' agreement." *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1114 (Pa. Super. Ct. 2007). Though the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, "establishes a strong federal policy in favor of compelling arbitration," *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000), the presumption applies "only when both parties have consented to and are bound by the arbitration clause," *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291.

4

Cir. 2014). Here, the question of whether there is a valid agreement to arbitrate comes down to one issue: So long as the Letter Agreements have a separate existence, without being merged into the 2010 Leases, Schoonover's claims fall outside the scope of the arbitration clause in the 2010 Leases. But if the Letter Agreements and the 2010 Leases are all part of one transaction, as the District Court found, then the dispute must be arbitrated.

**A.**

We must first determine what standard should have been applied. The District Court applied a motion to dismiss standard, and Schoonover contends this was error. Schoonover is correct that in certain circumstances a District Court should apply a summary judgment standard to the question of whether a valid agreement to arbitrate exists. But this is not a default rule. As we explained in *Guidotti*, "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Because all of the pertinent documents are attached to the complaint, a motion to dismiss standard was appropriate unless "the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776. Schoonover produced no additional facts that required either discovery or the burden shifting of a summary judgment standard. Their argument is simply that the 2010

5

Leases and the Letter Agreements should be read as independent documents—a legal question based entirely on documents attached to their initial complaint.[2] Accordingly the District Court correctly applied a motion to dismiss standard, as we will in our review.

**B.**

"When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. In construing a contract, we must determine the intent of the parties and give effect to all of the provisions therein." *Gaffer*, 936 A.2d at 1113 (quoting *Capek v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001)). The District Court found that "[t]he only reasonable interpretation of [the Letter Agreements] is that, once Northeast acquired the 2010 [L]eases, the provisions of the Letter Agreements modified those leases." We agree. First, the Letter Agreements define the 2010 Leases as the "Underlying Lease." Next, the Letter Agreements state that, upon Northeast's acquisition of the 2010 Leases, those leases would become "subject to the following conditions." And of most interest to this case, the paragraph that Schoonover claims was breached by Northeast, paragraph 3, states that any new leases would be "upon the same terms and

---

[2] Discovery had already begun in this case before the District Court ruled on the motion to dismiss, and Northeast turned over to Schoonover earlier versions of the Letter Agreements that Schoonover contends support the conclusion that the Letter Agreements were stand-alone documents. Even if these drafts were admissible, *see Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) and discussion, *infra*, they do not raise the type of factual dispute regarding the existence of an agreement to arbitrate that would require a summary judgment standard. *Cf. Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009) (applying a summary judgment standard when plaintiff submitted an affidavit swearing she had never seen the bylaws which included the contested arbitration provision and thus could not be bound thereby).

conditions as set forth in the Underlying Lease." One such term is that any dispute arising under the leases would be subject to arbitration, as this one must be. Like the District Court, we find no other plausible reading of the Letter Agreements.

Schoonover raises several arguments why this reading of the Letter Agreements is erroneous. First, they urge the presence of an integration clause "creates an ambiguity about the meaning of the writing" and the court should look to the earlier drafts of the Letter Agreements as evidence the parties intended the Letter Agreements to be separate and distinct from the 2010 Leases. But under Pennsylvania law,

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (citation omitted). This is particularly true when a writing contains an integration clause, as the Letter Agreements did. It is also true "that this general rule does not apply where the agreement is ambiguous." *Daset Min. Corp. v. Indus. Fuels Corp.*, 473 A.2d 584, 592 (Pa. Super. Ct. 1984). But this agreement is not ambiguous; there are no terms that need explanation. *Id.* (citing *Carter v. Edwin J. Schoettle Co.*, 134 A.2d 908 (Pa. 1957)) ("[E]vidence of prior negotiations is inadmissible to show an intent at variance with the language of the written agreement, but *is* admissible to show local usage, which would give a particular meaning to the language."). Schoonover attempts to use the past draft to show an intent

7

different from what is evident from the face of the document. The District Court did not err in declining to consider the earlier drafts.

Schoonover next contends the "commitment in Paragraph 3 to lease additional oil and gas interests had no relationship to the 2010 [Leases]." Although initially contending we should disregard the integration clause and consider the prior drafts as evidence, now Schoonover employs the integration clause to support its theory that we cannot look to the 2010 Leases for necessary terms of the agreement to lease additional oil and gas interests. They also contend that, because the parties later amended the 2010 Leases and made no reference to the Letter Agreements, it is clear the Letter Agreements were meant to be entirely separate contracts. But it is well established that, "[w]here several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." *Neville v. Scott*, 127 A.2d 755, 757 (Pa. Super. Ct. 1956). This is true even if the later instrument has an integration clause. *Id.* (citing *Int'l Milling Co. v. Hachmeister, Inc.*, 110 A.2d 186, 191 (Pa. 1955)).

Here, the Letter Agreements were part of one business transaction—Northeast's acquisition of the 2010 Leases from SWEPI—that amended the 2010 Leases, and the Letter Agreements and the 2010 Leases do "in terms refer to each other." This is no less true because the 2010 Lease Amendments do not refer to the Letter Agreements, nor because the Letter Agreements are not titled "amendments." Paragraph 3 states that any new leases would be "upon the same terms and conditions as set forth in the Underlying

8

Lease." Thus "both agreements were inexorably associated with the same transaction," *Kroblin*, 805 F.2d at 108, and the District Court was correct to read them together.

Finally, Schoonover cites to two cases, *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001) and *Industrial Electronics Corp. of Wisconsin v. iPower Distribution Group, Inc.*, 215 F.3d 677 (7th Cir. 2000), in which third party non-signatories to a contract with an arbitration provision were not required to arbitrate their dispute arising out of a later, related transaction with a signatory. But these cases are inapposite because both Schoonover and Northeast (by assignment) are signatories to both the 2010 Leases and the Letter Agreements. In sum, we, like the District Court, are unpersuaded by Schoonover's attempts to separate the Letter Agreements from the 2010 Leases. Schoonover must arbitrate this dispute with Northeast as it agreed to do.

## IV.

For the foregoing reasons, the judgment of the District Court will be affirmed.