**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CARR & DUFF, LLC, F/K/A CARR & DUFF, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RAY KING | : | |
| | : | No. 2788 EDA 2024 |
| Appellant | : | |

Appeal from the Judgment Entered November 8, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 200802959

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED JUNE 24, 2025**

Ray King appeals from the judgment entered by the Philadelphia County Court of Common Pleas on November 8, 2024, in favor of Carr & Duff, LLC, F/K/A Carr & Duff, Inc. in the amount of $1,024,803.99, which includes compensatory damages and attorney's fees and costs. On appeal, King challenges the grant of both the compensatory damages as well as attorney's fees. After careful review, we are constrained to reverse in part and remand.

The trial court summarized the extensive factual and procedural history of this case as follows:

**FACTS**

> For approximately thirty (30) years, from 1989 until 2019, King was an employee of Carr & Duff. King began his work at Carr & Duff as an apprentice and ended his career as Vice-President of

---

* Retired Senior Judge assigned to the Superior Court.

Operations. During King's time with Carr & Duff, he became familiar with the electrical construction business, customers, personnel, the pricing of the work, profitability of the company, equipment, and became "fairly integrated in the electrical construction industry in Philadelphia."

In or around 2018 King expressed his desire to retire and leave the electrical business. On or about January 7, 2019, King and Carr & Duff entered into the Employment Agreement and General Release ("2019 Employment Agreement"). King understood that the 2019 Employment Agreement contained terms related to non-competition and non-solicitation.

As of April 26, 2019, King and Carr & Duff terminated their employment relationship. As part of the 2019 Employment Agreement, King was barred from performing services on behalf of Carr & Duff and its subsidiaries. However, King would still "remain an active employee of the company through October 31, 2020, subject to the benefits, conditions, and restrictions of the 2019 Employment Agreement."

At the March 14, 2023 hearing for the assessment of damages, King testified that his obligations under the 2019 Employment Agreement included that he "would not for a period of 18 months after April 26, 2019, within a 75-mile radius of any office of the company directly or indirectly own, manage, operate, control, be employed by, consult with, participate in or be connected, in any manner, with the ownership, management, operation or control of any business which performs commercial or industrial electrical construction work or services or which, in any way, competes with the business operations of the company as conducted as of April 26, 2019." [Complaint, Exhibit B, at ¶ 10(a).]

King further testified that he understood his obligations under the 2019 Employment Agreement mandated that he "not for a period of 12 months after April 26, 2019, directly or indirectly contact or solicit or attempt to contact or solicit any of the company's customers or clients for the purpose of inducing them to terminate their relationship with the company and/or for the purpose of having any such customer or client do any business with or otherwise commence a business relationship with you or any business which employs directly or indirectly you or which you directly or indirectly own, manage, operate, are employed by,

consult with, participate in or are connected with in any manner."
[Complaint, Exhibit B, at ¶ 10(b).]

The 2019 Employment Agreement provided Carr & Duff's remedies in the event King violated or attempted to violate Paragraph 10 of the 2019 Employment Agreement, stating: "Any violation of this Paragraph 10 would cause [Carr & Duff] irreparable harm, and [Carr & Duff] will take all appropriate actions to address any violations by you of this Paragraph 10, including, but not limited to, seeking injunctive relief in court. Should [Carr & Duff] prevail in any action brought against you for violating this Paragraph 10, you agree that you will pay all attorneys' fees and costs [Carr & Duff] incurs in bringing and prosecuting such action." [Complaint, Exhibit B, at ¶ 10.]

On August 24, 2020, counsel for Carr & Duff sent a cease-and-desist letter to King. In the letter, counsel stated they had reason to believe King was in violation of the 2019 Employment Agreement and General Release. The letter alleged that King "breached and violated, or attempted to breach and violate [his] obligations and agreements under Section 10 of the agreement". The letter informed King that as a result of his alleged activities, it would immediately cease making payments under Paragraph 2 of the 2019 Employment Agreement. The letter further informed King that his failure or refusal to immediately cease activities barred by the 2019 Employment Agreement would result in Carr & Duff exercising its remedies under the 2019 Employment Agreement, and that if Carr & Duff brought forth and prevailed in a legal action, King would be responsible for all attorney fees and costs incurred pursuant to the 2019 Employment Agreement. The letter further demanded that King reimburse all amounts paid by Carr & Duff to him during the periods where his activities violated the 2019 Employment Agreement.

Prior to sending the letter, Carr & Duff[] made its last payment to King under the 2019 Employment Agreement on August 16, 2020. On August 29, 2020, King responded to the cease-and-desist letter, stating that the allegations were unsupported.

Carr & Duff ultimately filed suit on September 3, 2020 seeking relief in equity and law, and demanding money damages, attorneys' fees and costs, and such other relief as deemed necessary. Carr & Duff also named Riley Electric as a defendant in

the Complaint, asserting a tortious interference with contract claim.

A pretrial conference was held on August 11, 2022, where trial was set for March 13, 2023.

On March 8, 2023, the tort claim against Riley Electric was marked settled, discontinued, and ended, leaving King as the lone defendant in the proceedings.

On March 13, 2023, the parties stipulated that:

(1) "[King] violated and breached Section 10 of the 2019 Employment Agreement; (2) "[King] ... was paid, or [Carr & Duff] paid on his behalf, the amounts identified on [Carr & Duff]'s Trial Exhibit 406"; (3) "[King] withdraws his Counterclaim filed November 10, 2020 with prejudice"; (4) "the parties ... waive a jury trial on damages and to have damages determined through bench trial"; (5) "the parties stipulate to the authenticity and admissibility of [Carr & Duff]'s Trial Exhibits 1-459 and [King]'s Trial Exhibits 1-14, preserving all arguments as to relevancy and weight" (6) "... the [c]ourt will decide damages based on the record presented at the bench trial and arguments of counsel"; and (7) "After completion of the damages trial, the [c]ourt will conduct a hearing for the assessment and award of attorneys' fees and costs to [Carr & Duff] in accordance with paragraph 10 of the Employment Agreement."

On March 14, 2023, [the trial court] held a hearing to assess damages. [The court] heard that King received, pursuant to the 2019 Employment Agreement: (1) compensation of $155,320.28; (2) fringe benefits of $121,000; (3) life insurance premium of $40,000; (4) paid deferred compensation of $50,000; and (5) a payoff of an auto loan of $49,999. Those payments were confirmed by agreement of the parties by the March 13, 2023 stipulation. Accordingly, Carr & Duff sought monies in the total of $416,714 to recoup the aforementioned payments.

On September 18, 2023, [the trial court] heard arguments on attorneys' fees and costs, wherein Carr & Duff requested $505,720.72 in attorneys' fees and costs. Carr & Duff argued that Post & Schell's representation of Carr & Duff was discounted by 20% due to the longstanding relationship between counsel and

Carr & Duff, that counsel for Carr & Duff did not go on a "giant fishing expedition" when looking into the breach, that counsel made attempts to resolve the issue ahead of trial, and that counsel aimed to keep costs down and be efficient.

Over the course of three years, Carr & Duff engaged in discovery including but not limited to, subpoenaing nineteen (19) individuals and organizations and deposing eleven (11) individuals.

Carr & Duff deducted a total of $22,607.50 from its request for attorneys' fees and costs for work relating to the intentional interference with contractual relations claim against Riley Electric which subsequently settled.

## PROCEDURAL HISTORY

On September 3, 2020, Carr & Duff filed the operative Complaint, seeking relief in law and equity against King, and asserting a tort claim against Riley Electric.

On September 7, 2021, discovery closed.

On March 8, 2023, the tort claim against Riley Electric was marked settled, discontinued, and ended, leaving King as the lone defendant in the proceedings.

On March 10, 2023, jury selection began, with trial set to begin on March 13, 2023. On March 13, 2023, the parties stipulated that King breached Section 10 of the 2019 Employment Agreement. The parties further stipulated they would waive a jury trial on damages and proceed by way of a bench trial.

On March 14, 2023, [the trial court] held a hearing regarding the assessment of Carr & Duff's damages.

On September 18, 2023, [the trial court] held a hearing for the assessment of attorneys' fees and costs.

On September 19, 2023, [the trial court] entered an order giving the parties ten (10) days from the date of the transcription of the Notes of Testimony to submit Supplemental Briefs, Supplemental Findings of Fact and Conclusions of Law, and

proposed orders. On October 24, 2023, both parties filed proposed Findings of Fact and Conclusions of Law and proposed Orders.

On March 8, 2024, [the trial court] docketed an order entering judgment in favor of Carr & Duff, awarding $416,714.27 for compensatory damages plus pre-judgment interest, and awarding $505,720.72 to Carr & Duff for attorneys' fees and costs.

On March 12, 2024, Carr & Duff filed a praecipe to enter judgment in their favor in the amount of $1,011,383.46.

On April 4, 2024, King filed a notice of appeal from th[e] [c]ourt's order entered on March 8, 2024. On April 8, 2024, th[e] court ordered King to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). On April 29, 2024, King filed his statement of matters complaint of on appeal.

On May 28, 2024, the appeal was quashed by order of the Superior Court because post-trial motions had not been filed. In the order, the Superior Court gave King ten (10) days to file post-trial motions with [the trial court].

On June 7, 2024, King filed a post-trial motion challenging the damages verdict and the attorneys' fees verdict.

On July 16, 2024, oral argument on the post-trial motion was held.

On September 20, 2024, [the trial court] entered an order denying King's post-trial motion.

Trial Court Opinion, 12/17/24, at 1-8 (footnotes omitted)[1]. This timely appeal followed.

King raises the following claims on appeal:

_____

[1] We note that both "paragraph" and "section" have been used in this matter to reference terms of the Agreement. To stay consistent with citations to the agreement, we use the term "paragraph" in our own discussion.

1. Whether the trial court erred in awarding compensatory damages where the relief requested, return of specific payments, is barred by the language of the applicable agreement.

2. Whether the trial court erred in awarding reliance damages for [King]'s breach of a non-compete where the reliance damages claimed constituted consideration for a general release which was not breached.

3. In the alternative, whether the trial court erred in granting both compensatory damages and attorneys' fees where the award of all of the severance paid to [King] resulted in a rescission of the applicable agreement.

4. Whether the trial court erred in awarding $505,720.72 in attorneys' fees and costs where the amount awarded constitutes every penny of claimed damages, and did not take into consideration [Carr & Duff]'s lack of success on its injunction claims, tort claims against another defendant for which no fees are permitted, and where the trial court conducted no reasonableness analysis.

Appellant's Brief, at 6-7 (unnecessary capitalization omitted).

We initially refer to our well established standard of review:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664–65 (Pa. Super. 2014) (citation, brackets, and ellipses omitted).

King's issues are separated into two main arguments: (1) the damages verdict is based on an error of law and barred by the employment agreement, and (2) the attorneys' fees verdict is unreasonable and improperly punitive.

King first argues the trial court erred in awarding compensatory damages where the relief requested – return of specific payments – is barred by the specific language of the applicable agreement, i.e., the 2019 Employment Agreement.

To address King's argument, we must construe the 2019 Employment Agreement according to contract law principles. Contract interpretation is a question of law; therefore, this Court is not bound by the trial court's interpretation. *See Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007).

> In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Waldron Elec. Heating & Cooling LLC*, 100 A.3d at 665 (citation omitted). Further, "[w]e emphasize that the contract must be interpreted as a whole, and an interpretation that gives effect to all of the contract's provisions is

preferred." ***Gaffer Ins. Co. v. Discover Reinsurance Co.***, 936 A.2d 1109, 1113 (Pa. Super. 2007) (citations omitted).

In relevant part, the 2019 Employment Agreement includes non-compete terms in Paragraph 10. The agreement specifically identifies the remedy for any breach of Paragraph 10 as follows:

> You represent and warrant that your agreement to be bound by the restrictions set forth in this Paragraph 10 is a material inducement for the payments and benefits which the Company has agreed to provide to you that are set forth in Paragraph 2 above. Should you violate or attempt to violate any provision in this Section 10, the Company will cease making all payments set forth in Paragraph 2. Any violation of this Paragraph 10 would cause the Company irreparable harm, and the Company will take all appropriate actions to address any violations by you of this Paragraph 10, including, but not limited to, seeking injunctive relief in court.

Complaint, Exhibit B, at ¶ 10. Further, Carr & Duff additionally reserved their right to injunctive relief in Paragraph 10(f) as follows:

> … you acknowledge that the Company shall be entitled to preliminary and permanent injunctive relief for a violation of any such restrictions without the need to post bond and without limiting the Company's rights to money damages caused by lost earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which the Company may be entitled in law or equity.

Complaint, Exhibit B, at ¶ 10(f).

Carr & Duff argues the 2019 Employment Agreement provided them with various remedies for King's violation of Paragraph 10, including ceasing payments pursuant to Paragraph 2, injunctive relief, and monetary damages.

While that may be true, the monetary damages permitted by the Agreement's language was not unlimited.

Carr & Duff was permitted to seek injunctive relief under the terms of the Agreement. Further, in the event Carr & Duff chose to seek injunctive relief, they were not prevented from also seeking "money damages caused by lost earnings, profits and other benefits arising from such violation." *Id.* Notably, it is uncontested that Carr & Duff withdrew their claim for injunctive relief. It is further uncontested that Carr & Duff dropped their claim for lost profits against King. Accordingly, it appears from the record that Carr & Duff chose not to pursue the money damages reserved under Paragraph 10(f). We can find no language permitting the monetary damages granted here—the benefits already paid to King under Paragraph 2.

Pursuant to Paragraph 2 of the 2019 Employment Agreement, Carr & Duff agreed to pay certain monies in exchange for King's agreement "to be bound by the General Release in Paragraph 3 below and the other terms and conditions of this Agreement described below." Complaint, Exhibit B, at ¶ 2. One such "other term" of the Agreement related to Paragraph 2 appears in Paragraph 10, in which King agreed that the restrictions in Paragraph 10 were a material inducement for the payments and benefits set forth in Paragraph 2. However, this acknowledgment was limited by the sentence following it, in which the Agreement specifically stated that the remedy for a violation of Section 10 would therefore be cessation of the payments set forth in

- 10 -

Paragraph 2. **See** Complaint, Exhibit B, at ¶ 10 ("the Company will cease making all payments set forth in Paragraph 2."). There is no mention whatsoever of recuperation of payments already made.

Again, a contract must be interpreted as a whole. **See Gaffer Ins. Co.**, 936 A.2d at 1113. When the above terms of the 2019 Employment Agreement are read together, the language simply does not permit the monetary damages granted here.

King also argues that the court erred in awarding reliance damages for his breach of non-compete terms where the damages claimed constituted consideration for a general release which was not breached. We agree.

Pursuant to the plain language of the Agreement, the *continuation* of Paragraph 2 payments was inducement for King to not breach the non-compete terms in Paragraph 10.

However, the Paragraph 2 payments were made to King as consideration for his agreement to be bound by the General Release terms in Paragraph 3. **See** Complaint, Exhibit B, at ¶ 2 ("If you sign this Agreement, agreeing to be bound by the General Release in Paragraph 3 below and the other terms and conditions of this Agreement described below, the Company will do the following []: [proceeds to describe all payments that will be made]"); **see also id.** at ¶ 3(a) ("In exchange for the benefits described in Paragraph 2, you release waive and forever discharge … the Company … from any and all

claims, causes of action, complaints, lawsuits or liability of any kind (collectively "Claims") …").

Notably, there are no allegations that Paragraph 3 has been breached. Therefore, any benefits already paid under Paragraph 2 were paid properly to King in exchange for his continued agreement to release Carr & Duff from all claims indicated in the Agreement. Said another way, Carr & Duff had to make those payments to King as consideration for a general release of claims against them, and therefore they did not simply rely on King not breaching Paragraph 10 in making all of the payments.

Accordingly, we reverse the award of compensatory damages and remand this issue to the trial court for recalculation of damages excluding the amount already paid to King pursuant to Section 2 prior to his breach of Section 10 of the contract. Due to our disposition, we need not reach King's third, alternative issue, related to the same compensatory damages.

Lastly, King argues the trial court erred in awarding $505,720.72 in attorneys' fees and costs where the amount awarded "constitutes every penny of claimed damages", and did not take into consideration Carr & Duff's lack of success on its injunction claims and tort claim against another defendant. King further contends the court failed to perform a reasonableness analysis.

"The general rule in this Commonwealth is that there is no recovery of attorney's fees from an adverse party in the absence of an express statutory authorization, clear agreement between the parties, or the application of a

clear exception." **Bayne v. Smith**, 965 A.2d 265, 267 (Pa. Super. 2009) (citation omitted).

Here, it is undisputed the 2019 Employment Agreement provided an agreement between the parties related to attorney's fees. The trial court read the Agreement to say, "that in the event of a breach of the Agreement, the breaching party must pay the attorney fees incurred by the non-breaching party in enforcing the Agreement." Trial Court Opinion, 12/17/24, at 15. Accordingly, the court found Carr & Duff were entitled to attorney's fees incurred in prosecuting the entire action against King.

> The 2019 Employment Agreement specifically provides as follows:
>
> Should the Company prevail in any action brought against you for violating this Paragraph 10, you agree that you will pay all attorney's fees and costs the Company incurs in bringing and prosecuting such action.

Complaint, Exhibit B, at ¶ 10.

Carr & Duff argue they "prevailed" here, based on King's stipulation that he breached Paragraph 10. Accordingly, Carr & Duff argue they were properly awarded attorney's fees related to pursing the entire action against King. Essentially, since they prevailed in the end by receiving a judgment in their favor, Carr & Duff argue they are owed all attorney fee's amassed in pursuing the litigation against King for a breach of Paragraph 10.

King does not dispute that he owes attorney's fees in general. However, King argues he does not owe the entire amount of attorney's fees, including fees related to Carr & Duff's claims which they withdrew or discontinued.

Specifically, King argues that since Carr & Duff withdrew or discontinued their claims for injunctive relief and their tort claim against another defendant, that Carr & Duff did not "prevail" on those claims, and therefore King is not responsible for any attorney fees applicable to those claims.

Carr & Duff filed an action against King based on a breach of Paragraph 10 of the 2019 Employment Agreement. In their requests for relief, Carr & Duff specifically requested attorney's fees and costs related to bringing such action. *See* Complaint, 9/3/20, at 18, 20, and 21.

During the litigation process, Carr & Duff eventually withdrew a claim for injunctive relief, and discontinued a tort claim against a third party. *See* Stipulation and Order, 8/1/22; *see also* Order, 3/8/23.

Nevertheless, in the end, the trial court entered a judgment in favor of Carr & Duff based on the action brought against King for the breach of the Agreement. Accordingly, pursuant to the clear terms of the Agreement, Carr & Duff "prevail[ed] in an[] action brought against [King] for violating [] Paragraph 10", and therefore Carr & Duff are entitled to attorney's fees incurred in bringing the action. There is simply no language that limits that award to only specific claims within an action.

We note that even where a contract provides for attorney's fees, "a trial court is permitted to consider the reasonableness of contractually mandated attorney fees and to reduce those fees where the trial court deems it appropriate." *Vinculum, Inc. v. Goli Techs*, LLC, 310 A.3d 231, 247 (Pa.

2024). King asserts the court did not perform a reasonableness analysis. This assertion is belied by the record.

On March 14, 2023, the court held a hearing regarding the assessment of Carr & Duff's damages. At the end of that hearing, the parties agreed the court still had to make a ruling on the reasonableness of the attorney's fees. *See* N.T., 3/14/23, at 213-14.

On September 18, 2023, a hearing was held specifically to address the assessment of attorney's fees and costs. The transcript of the hearing is well over 100 pages, much of which is spent discussing the attorney's fees. The discussion includes specific references by both parties to the reasonableness of the fees. *See* N.T., 9/18/23, at 10, 12, 14, 23, 108, 132, 133.

We acknowledge it was certainly understandable to question the "reasonableness" of having King pay attorney's fees related to claims which Carr & Duff withdrew or dismissed. However, the record is clear that the court considered this question. In its opinion on appeal, the trial court explained that the fees awarded were justified in light of the protracted litigation that followed King's breach. *See* Trial Court Opinion, 12/17/24, at 16-17.

> Whether [a litigant] may recover attorneys' fees in the damages litigation presents a pure question of law, over which our review is plenary and *de novo*. In contrast, we review the trial court's determination of the amounts of attorneys' fees for an abuse of discretion.

- 15 -

***Bert Co. v. Turk***, 257 A.3d 93, 116 (Pa. Super. 2021), ***aff'd,*** 298 A.3d 44 (Pa. 2023) (citations omitted). We can find no abuse of discretion in the trial court's analysis.

In summary, on remand, the trial court is instructed to recalculate the damages award, omitting the amounts paid to King pursuant to Section 2, prior to his breach of the agreement. In all other respects, we affirm.

Judgment reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2025