J-A05004 & 005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GOLDEN EAGLE RESOURCES II, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EQT PRODUCTION COMPANY | : | |
| | : | |
| Appellant | : | No. 261 WDA 2024 |

Appeal from the Order Entered February 8, 2024
In the Court of Common Pleas of Greene County Civil Division at No(s):
No. 134 AD 2023

| | | |
|---|---|---|
| SILTSTONE RESOURCES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EQT PRODUCTION COMPANY | : | |
| | : | |
| Appellant | : | No. 413 WDA 2024 |

Appeal from the Order Entered March 27, 2024
In the Court of Common Pleas of Greene County Civil Division at No(s):
578 AD 2023

BEFORE:    MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E. [*]

MEMORANDUM BY MURRAY, J.:                    **FILED: MARCH 20, 2025**

In these consolidated appeals, EQT Production Company (Appellant) appeals from the orders dismissing its preliminary objections seeking to dismiss the complaints filed by Golden Eagle Resources II, LLC (GER) (No. 261

---

[*] Retired Senior Judge assigned to the Superior Court.

WDA 2024), and Siltstone Resources, LLC (Siltstone) (No. 413 WDA 2024), and denying its requests to compel arbitration of the parties' disputes in accordance with their respective lease agreements. After careful consideration, we affirm the trial court's orders.

## GER's Appeal (261 WDA 2024)

GER commenced its action against Appellant by a writ of summons filed on March 16, 2023. On May 3, 2023, GER filed its civil complaint. Appellant preliminarily objected to the complaint and, with leave of the trial court, GER filed an amended complaint on September 8, 2023.

As alleged in GER's amended complaint, on May 2, 2017, GER entered into a lease agreement (GER Lease) whereby it leased its oil and gas interests underlying two parcels of real property located in Greene County (the GCPs), Pennsylvania, to LOLA Drilling I, LLC (LOLA). Amended Complaint, 5/2/17, ¶ 3. Appellant subsequently acquired LOLA's interests in the GER Lease. *Id.* ¶ 4.

However, the GER Lease also specified criteria that, if met, would maintain its effect beyond the primary term. *Id.* According to the amended complaint,

> [t]he 2017 [GER] Lease remains operative beyond its primary term if its "Leasing Term" Addendum is satisfied, which required (i) actual drilling operations … being conducted on the [GCPs] or lands pooled therewith, or (ii) oil or gas, or their constituents, are being produced in paying quantities from the Leased Premises or lands pooled therewith.

*Id.* ¶ 14. The GER Lease defined "operations" in an addendum (Addendum):

### *Operations*

"Actual drilling operations" shall be deemed to have commenced only after a derrick, a rig, or machinery capable of drilling an oil and/or gas well to its permitted depth is both "spudded-in" and rotating under power on the Leased Premises, or lands pooled therewith, at the location for a permitted well. Whenever the provisions of this Lease refer to "commence" or "commencement" of a well, it is intended to mean the commencement of the actual drilling operations for such well. For purposes hereof, a well shall be deemed to have been completed (and, therefore, actual drilling operations ceased as to that well) on the earliest of the following dates: (i) the date on which the well is plugged and abandoned as a dry hole, (ii) the date thirty (30) days after the date on which the well reached total depth (or, in the case of a Horizontal Well, the date the well has been drilled to the terminus of the lateral portion of the wellbore), the (iii) the date certified to the state oil and gas regulatory agency of jurisdiction where the Leased Premises is located, as the date a well has been completed as a producing well, or (iv) nine (9) months from such commencement date. "Actual reworking operations" shall mean reentry into a previously completed and producing well and actual work in the hole in a good and workmanlike manner and prosecuted with reasonable diligence.

*Id.* ¶ 15 (citation omitted). Thus, GER asserted that under the Addendum, "actual drilling operations" are deemed completed at the earliest of four possible dates:

a. The date on which the well is plugged and abandoned as a dry hole;

b. The date thirty days after the date on which the well reached a total depth[;]

c. The date certified to the state as the date a well has been completed as a producing well; or

d. Nine months from the commencement date.

*Id.* ¶ 20.

GER averred that the GER Lease expired as to the following GCPs:

a. Greene County Tax Parcel 29-05-0103: 154.345 acres [(Parcel 103);]

b. Greene County Tax Parcel 23-04-152-A: 20 acres [(Parcel 152A) (collectively, the expired parcels)].

*Id.* ¶ 16. The expired parcels are included within the boundaries of the following pooled units: Parcel 103 is included in Pooled Unit - Polecat NS 4; and Parcel 152A is included in Pooled Unit – South Soles 2. *Id.* ¶ 20.

GER asserted that wells in both pooled units commenced on September 15, 2020. *Id.* at 21. Therefore, under the Addendum, the wells were considered "completed" prior to the expiration of the primary terms, as more than nine months had elapsed since their commencement. *Id.* ¶ 22. As such, GER alleged, no actual drilling operations would satisfy the requirements necessary to keep the GER Lease in effect as to Parcel 103. *Id.* ¶ 23.

With regard to wells in the South Soles 1 Unit or South Soles 2 Unit, GER averred that the wells were commenced in late March 2021 or early April 2021. *Id.* ¶ 24. According to GER, wells in the South Soles 1 Unit and South Soles 2 Unit were drilled to their total depths of their horizontal wellbores by December 1, 2021. *Id.* ¶ 25. GER asserted these wells were considered "completed" before the expiry of the lease's primary term, because of the passage of nine months since the wells reached their total depth. *Id.* ¶ 26.

GER further asserted that, at the end of the primary term of the GER Lease, "there was no hydrocarbon production in paying quantities from either

the South Soles 1 Unit or the South Soles 2 Unit" to maintain the lease as to Parcel 152A. *Id.* ¶ 27. Thus, GER averred the GER Lease terminated as to the expired parcels because of Appellant's "operational conduct and lack of production in paying quantities[,]" as required to extend the GER Lease beyond its primary term. *Id.* ¶ 28.

GER asserted four counts in its amended complaint. In Count I, GER alleged that Appellant breached the GER Lease. According to GER, Appellant "produces hydrocarbons from the [GCPs] from lands unitized therewith." *Id.* ¶ 33. However, GER averred that Appellant

> has not paid GER its royalty due under the [GER Lease] for the [GCPs] the royalty rate stipulated in the 2017 [GER] Lease[,] nor in the manner required in the [GER Lease,] because the royalty is not paid at the 18% rate with no deductions that is set forth in the "Royalty" Addendum to the [GER Lease].
>
> [Appellant's] failure to pay GER its royalty for [the GCPs] under the terms of the [GER Lease] is a breach of the [GER Lease] and has damaged GER by resulting in a royalty underpayment to GER.

*Id.* ¶¶ 35-36 (paragraph designations omitted). GER asserted that each failure to pay the required royalty rate constituted a separate breach of the GER Lease, and that the unpaid amounts are in excess of the arbitration limits. *Id.* ¶¶ 37-38.

In Count II, GER sought to quiet title as to the expired parcels. GER asserted that the Addendum was not satisfied as to these parcels, because there was no production in paying quantities from the expired parcels or their pooled units at the expiration of the primary term. *Id.* ¶ 42. GER claimed

- 5 -

that the absence of a release and surrender of the GER Lease as to the expired parcels resulted in a cloud and encumbrance on GER's oil and gas title as to these parcels. *Id.* ¶ 45. GER's action seeks to compel Appellant to record, cancel, surrender or satisfy of record the GER Lease as to Parcels 103 and 152A. *Id.* ¶ 47.

In Count III, GER averred Appellant's conversion of Parcel 103 by placing that parcel into both the Polecat NS 4 Unit and the Polecat NS 5 Unit. *Id.* ¶ 67. GER alleged

> the inclusion of [Parcel 103] into both the Polecat NS 4 Unit and the Polecat NS 5 Unit represented a conclusion by [Appellant] that the target formation underlying [Parcel 103] was being produced from a well(s) in both the Polecat NS4 Unit and the Polecat NS 5 Unit.

*Id.* According to GER, although hydrocarbons are being produced and sold from the Polecat NS 4 Unit and the Polecat NS 5 Unit, Appellant has not delivered GER's ownership share of the value of those hydrocarbons, without the share being diminished by any royalty. *Id.* ¶ 72. This value, GER argues, is in excess of the arbitration limits. *Id.* (Count III, prayer for relief).

Similarly, GER sought damages for conversion regarding Parcel 152A. GER claimed that during the primary term of the GER Lease, Appellant placed Parcel 152A into both the South Soles 1 Unit and the South Soles 2 Unit. *Id.* ¶ 75. By doing so, GER argues, Appellant admitted that "the target formation underlying [Parcel 152A] was being produced from well(s) in both the South Soles 1 Unit and the South Soles 2 Unit." *Id.* ¶ 77. GER alleged that wellbores

from one or more wells from the South Soles Unit traverse Parcel 152A, and that their close proximity allowed the drainage and production of hydrocarbons from that parcel. *Id.* ¶ 78. According to GER, Appellant has not delivered to GER its ownership share of the value of the hydrocarbons. *Id.* ¶ 81.

Relevant to this appeal, on September 28, 2023, Appellant filed preliminary objections to GER's amended complaint. Appellant's preliminary objections sought to compel arbitration of the parties' disputes in accordance with arbitration provisions found in the GER Lease. According to Appellant,

> Paragraph 7(b) of the [GER] Lease provided for arbitration of any controversy or claim under the Lease. The [GER] Lease further included a provision providing that the lease shall not terminate until after a final arbiter's order and a reasonable time for Appellant to cure:
>
> [The GER] Lease shall not terminate for any failure, default, breach, actions, or omissions (collectively, a "Failure") by [Appellant] until it shall have been determined by a final arbitrator's order that such Failure exists and [Appellant] has been given a reasonable time after such final order to cure any such Failure. Any termination of this Lease shall not cause a release, surrender, or termination of the rights and interests of [Appellant] in any wells, units, pools, or improvements that are unrelated to the termination cause.

Preliminary Objections, 9/28/23, ¶ 3 (emphasis omitted) (quoting GER Lease, 5/2/17, ¶ 7(c)).[1]

---

[1] As will be discussed in detail *infra*, the Addendum also included a "Choice of Forum" provision. This provision permitted GER, the lessor, to choose the forum of any disputes regarding the Lease. Addendum (Ex. A).

On February 8, 2024, following consideration of the parties' briefs and oral argument, the trial court dismissed Appellant's preliminary objections. Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

**Siltstone's Appeal (No. 413 WDA 2024)**

Siltstone commenced its action against Appellant by filing a complaint on September 8, 2023. Relevantly, Siltstone's complaint alleged that it entered into a lease agreement (Siltstone Lease) with Appellant on May 2, 2017. Siltstone Complaint, 9/8/23, ¶ 3. The terms of the Siltstone Lease with regard to the five-year lease term, and criteria that would extend the term, are identical to those in GER Lease. Significantly, the Siltstone Lease included identical terms in the lease regarding arbitration, and included a "Choice of Forum" provision in the Addendum's Exhibit A. *Id.*, Ex. A. Siltstone averred one count to quiet title to Greene County Tax Parcels 20-02-153 and 20-2-154. *Id.* ¶¶ 18-20. According to its complaint, the two parcels were pooled with the Polecat NS 6 unit. *Id.* ¶¶ 2-3.

Siltstone averred the Siltstone Lease expired and terminated as to its two parcels, because (a) there were no actual drilling operations at the expiry of the primary lease term in the Polecat NS 6 Unit; (b) "pooling and/or unitization of Greene County Tax Parcels 20-02-153 and 20-2-154 was inoperative, ineffective and not recognized under the [Siltstone] Lease"; and (c) there were no wells in the Polecat NS 6 Unit in sufficient proximity to

Siltstone's parcels to produce hydrocarbons from those parcels. *Id.* ¶¶ 14-19.

On October 19, 2023, Appellant preliminarily objected to Siltstone's complaint. As in the GER case, Appellant claimed the quiet title action must be dismissed, because under the plain terms of the Siltstone Lease, there can be no finding that the lease terminated without a prior arbitrator's order and a reasonable time by Lessee to cure. Preliminary Objections (Siltstone), 10/19/23, ¶ 17. On March 27, 2024, upon consideration of the parties' briefs and oral arguments, the trial court overruled Appellant's preliminary objections. Appellant and the trial court have complied with Pa.R.A.P. 1925.

On December 12, 2024, this Court consolidated Nos. 261 and 413 WDA 2024 for appellate review.

## Issue

Appellant raises the following issue in both appeals:

> Whether the trial court erred in denying [Appellant's] preliminary objection to compel arbitration of [GER's and Siltstone's] claims, where the parties' lease agreement commands that "[a]ny controversy or claim arising out of, or related to this Lease, or the breach thereof shall be ascertained and settled by three (3) disinterested arbitrators," and where no other lease provision nullifies the lease's arbitration agreement?

Appellant's Brief (GER) at 4; Appellant's Brief (Siltstone) at 4.

## Scope and Standards of Review

We review a trial court's denial of preliminary objections in the nature of a petition to compel arbitration for an abuse of discretion, and to determine

- 9 -

whether the trial court's findings are supported by substantial evidence.

***Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.***, 936 A.2d 1109, 1112-13 (Pa. Super. 2007); ***Smay v. E.R. Stuebner, Inc.***, 864 A.2d 1266, 1270 (Pa. Super. 2004).

> In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

***Elwyn v. DeLuca***, 48 A.3d 457, 461 (Pa. Super. 2012) (quoting ***Smay***, 864 A.2d at 1270 (citations omitted)).

> **Whether a claim is within the scope of an arbitration provision is a matter of contract**, and as with all questions of law, our review of the trial court's conclusion is plenary. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. These are questions of law and our review is plenary.

***Id.*** at 461 (emphasis added; quotation marks and citation omitted).

> Arbitration is a matter of contract, and **parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue**. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

***Id.*** (emphasis added; citation omitted).

### The Agreement to Arbitrate.

We first determine "whether a valid agreement to arbitrate exists."

***Smay***, 864 A.2d at 1270.

- 10 -

The touchstone of any valid contract is mutual assent and consideration. The issue of whether parties agreed to arbitrate is generally one for the court, not the arbitrators. When addressing that issue, courts generally apply ordinary state law contract principles, but in doing so, must give due regard to the federal policy favoring arbitration.

***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94, 96 (Pa. Super. 2015) (citations and quotation omitted). "[A]rbitration cannot be compelled in the absence of an express agreement to arbitrate." ***Gaffer***, 936 A.2d at 1113 (citation omitted).

Instantly, the arbitration provisions are included within the parties' respective leases. "A lease is in the nature of a contract and is to be controlled by principles of contract law." ***Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.***, 217 A.3d 1227, 1238 (Pa. 2019) (quoting ***Pugh v. Holmes***, 405 A.2d 897, 903 (Pa. 1979)). "[T]he intent of the parties to a written contract is to be regarded as being embodied in the writing itself[.]" ***Steuart v. McChesney***, 444 A.2d 659, 661 (Pa. 1982).

When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. **In construing a contract, we must determine the intent of the parties and give effect to all of the provisions therein. An interpretation will not be given to one part of the contract which will annul another part of it.**

We emphasize that the contract must be interpreted as a whole, and an interpretation that gives effect to all of the contract's provisions is preferred. In addition, a preferred contract interpretation ascribes under all circumstances the most reasonable, probable, and natural conduct to the parties.

*Gaffer*, 936 A.2d at 1113 (citations, quotation marks, and quotation omitted; emphasis added).

However, if contract terms are ambiguous, the court may receive extrinsic evidence to resolve the ambiguity. *Tuthill v. Tuthill*, 763 A.2d 419, 420 (Pa. Super. 2000) (*en banc*). Nevertheless, a contract is not ambiguous merely because parties do not agree on the proper construction, nor is there any ambiguity "if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends[.]" *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. 1993) (citation omitted).

Finally, we are cognizant of the presumption that parties choose contract language specifically and carefully:

> [The] court does not assume that contractual language is chosen carelessly, nor does it assume that the parties were ignorant of the meaning of the language they employed[.] … [B]efore a court will interpret a provision … in a contract in such a way as to lead to an absurdity or make the … contract ineffective to accomplish its purpose, it will endeavor to find an interpretation [that] will effectuate the reasonable result intended.

*Binswanger of Pa., Inc. v. TSG Real Estate LLC*, 217 A.3d 256, 262 (Pa. 2019) (citations, quotations marks, and brackets omitted).

Both the GER Lease and Siltstone Lease include the following arbitration provision:

**7. Default.**

- 12 -

a. If Lessor fails to pay refunds due hereunder, Lessee may deduct the amount from future payments due to Lessor hereunder or under other contracts between the parties.

b. **Any controversy or claim arising out of, or related to this Lease, or the breach thereof shall be ascertained and settled by three (3) disinterested arbitrators** in accordance with the rules and regulations of the American Arbitration Association, but without the requirement that the American Arbitration Association be utilized, … and judgment upon the award rendered by the arbitrators may be entered into any court having jurisdiction thereof. Arbitration proceedings hereunder shall be conducted in Allegheny County, Pennsylvania. Each party is responsible for paying their own arbitrator, with the third party arbitrator fees to be split between the parties.

c. **This Lease shall not terminate for any failure, default, breach, actions, or omissions (collectively, a "Failure") by Lessee until it shall have been determined by final arbitrator's order** that such Failure exists and Lessee has been given a reasonable time after such final order to cure any such Failure. Any termination of this Lease shall not cause a release, surrender, or termination of the rights and interests of Lessee in any wells, units, pools, or improvements that are unrelated to the termination cause.

d. Lessor and Lessee agree that it is in their mutual interest not to require Lessee to engage in operations (as defined herein) during any period of time in which the validity of this Lease is challenged, contested. or disputed. **If any arbitration or other proceeding is commenced** in which the validity of this Lease is disputed, or if Lessor takes any action which would prevent Lessee from enjoying the benefits of or complying with the terms of this Lease, then the Primary Term (if still in effect) and/or Lessee's obligation to conduct operations on the Leased Premises or on lands unitized or pooled therewith, in order for this Lease to continue beyond the Primary Term (if the Primary Term has lapsed), shall be tolled and extended during the pendency of the dispute or judicial proceeding from its commencement through the entry of the final arbitrator's order plus an additional 90 days from

> the resolution of the dispute or entry of the final, non-appealable judgment.

GER Lease, 5/2/17, at 3 ¶ 7 (emphases added); Siltstone Lease, 5/2/17, at 3 ¶ 7 (emphases added).

However, the GER Lease and Siltstone Lease[2] also have a separately executed Addendum. The Addendum includes a provision addressing potential conflicts between the Lease and Addendum (Exhibit A), as well as a "Choice of Law and Right to Forum" provision:

> THIS EXHIBIT "A" is attached to and wholly incorporated into [the Lease] dated the 2nd day of May, 2017 ("Effective Date"), by and between [GER and Siltstone] as Lessor[s], [Appellant] as Lessee.
>
> **In the event of a conflict between the terms of this Exhibit "A" and the terms of the Lease, <u>the terms of this Exhibit "A" will control</u>.**
>
> ….
>
> **<u>Choice of Law and Right to Forum</u>**
>
> The provisions of this Lease and the relationship of the Parties will be governed and interpreted according to the laws of the state where the Leased Premises is located without regard to choice or conflict of laws that would refer the matter to the laws of another jurisdiction.
>
> **Lessor fully reserves the right to file a lawsuit in any federal or state court that has jurisdiction over the Parties regarding <u>any dispute</u> related to this Lease.**
>
> If Lessor files **any form of legal action to enforce any express or implied obligation of this Lease** and receives a favorable

---

[2] For ease of reference, we hereinafter collectively refer to the Siltstone Lease and GER Lease as "Lease."

judgment from a panel or court of competent jurisdiction, then Lessee [(Appellant)] shall reimburse Lessor for all costs, fees, and expenses of such legal proceedings, including reasonable attorney's fees.

Lease (GER and Siltstone), 5/2/17, at 8, 15 (Addendum Ex. A) (emphases added).

In determining whether the parties agreed to arbitrate disputes, our review discloses a potential conflict between paragraph 7(b) of the Lease ("[a]**ny controversy or claim arising out of, or related to this Lease**, or the breach thereof shall be ascertained and settled by three (3) disinterested arbitrators") and the Addendum ("Lessor fully reserves the right to file a lawsuit in any federal or state court that has jurisdiction over the Parties regarding **any dispute related to this Lease**."). Lease (GER and Siltstone), 5/2/17, at 3 (¶ 7(b)); 15 (Addendum Ex. A) (emphases added).

Appellant argues that the arbitration clause of the Lease controls, because the Lease affects interstate commerce. Appellant's Brief at 21. Appellant asserts that the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-14, established a national policy favoring arbitration. Appellant's Brief at 14. According to Appellant, the FAA applies to any contract evidencing a transaction involving commerce. *Id.* at 15. Appellant explains, "the FAA's substantive rules 'apply in state as well as federal courts' if a contract involves interstate commerce." *Id.* (quoting ***Southland Corp. v. Keating***, 465 U.S. 1, 12 (1984)). Appellant states, "[t]his is true even where the contract contains a choice of law provision designating a state's laws as the law

governing the parties' claims." *Id.* at 15 n.2. Appellant points out that Pennsylvania's Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301-7362, similarly favors arbitration. Appellant's Brief at 16.

Appellant further argues "the plain language of the arbitration provisions mandates arbitration for any claims 'arising out of' or 'related to' the [L]ease." *Id.* at 20. According to Appellant, the Addendum "does not present a 'scope' question, but instead a question about whether an agreement to arbitrate exists." *Id.* Appellant maintains the Right to Forum provision does not nullify the obligation of GER and Siltstone to arbitrate their claims. *Id.*

Appellant states that the plain language of the arbitration agreement is mandatory and covers "any" dispute "arising out of" or "related to" the Lease. *Id.* at 24 (quoting Lease, 5/2/17, ¶ 7(b)). Appellant claims this language is mandatory, and not permissive. *Id.* Appellant contends that the language of the Addendum does not change or nullify the agreement to arbitrate. *Id.* According to Appellant, the Addendum's terms are additional and not superseding. *Id.* at 25.

Appellant also argues the provisions of the Lease and Addendum may be read, in harmony, to give effect to both. *Id.* at 23. Appellant asserts that the arbitration provision does not foreclose the possibility that the parties will need to go to court, such as to compel or enforce an arbitration award. *Id.* at 26. Thus, the forum selection clause speaks "only to where that litigation may take place—it does not say that litigation in court is permitted in

contravention of an agreement to arbitrate." *Id.* Appellant states that under this interpretation, the provisions "sit comfortably side-by-side when each is given effect as Pennsylvania law requires." *Id.* By contrast, Appellant claims that the trial court's interpretation nullifies the arbitration clause, "which the rules of contract interpretation forbid." *Id.* (citation omitted).

Appellant relies on this Court's decision in *Gaffer* to support its claim that the Lease mandates arbitration. According to Appellant, the provisions at issue in *Gaffer* are substantially similar to those in the present case. Appellant's Brief at 25. In *Gaffer*, Appellant argues, this Court held the arbitration clause was controlling and enforceable. *Id.*

GER counters that the parties' chosen language in the Lease confirms that GER is not compelled to arbitrate this "or any other[] dispute **that [GER] may have** related to the [] Lease." GER's Brief at 4 (emphasis added). GER asserts that the parties bargained "that one set of terms would control over another in the event of a conflict." *Id.* GER maintains that, "[t]hrough the Choice of Law and Right to Forum Clause, [GER], as lessor, '… fully **reserves the right** to file a lawsuit in any federal or state court that has jurisdiction over the Parties regarding any dispute related to this Lease.'" *Id.* at 9 (quoting Lease, 5/2/17, at 15) (emphasis added). GER points out the title of this section includes the term "Right to Forum." *Id.* at 10. By GER's reservation of its right to choose a forum, GER argues that it cannot be compelled to arbitrate. *Id.* at 11.

GER asserts that the arbitration clause in the Lease and the Right to Forum clause in the Addendum conflict, as each specifies "different means of dispute resolution for the same type of dispute." *Id.* at 13. Therefore, GER contends, there is a clear conflict and these clauses cannot be harmonized. *Id.* GER also points out that the choice of law/forum provision expressly recognizes its right to seek redress in court, when it allows GER to recover fees, costs, and expenses of legal proceedings:

> [i]f Lessor [GER] files any form of legal action to enforce any express or implied obligation of this Lease and receives a favorable judgment from a panel or court of competent jurisdiction ….

*Id.* at 16 (quoting Lease, 5/2/17, at 15 (Addendum Ex. A)). GER argues this provision recognizes GER's right to file a legal action to enforce "any express or implied obligation of this Lease." *Id.*

GER disputes the applicability of *Gaffer* to resolve the instant issue. *Id.* at 19. GER argues *Gaffer* is distinguishable, as the two provisions in that case were included in a "single contract form containing both" provisions. *Id.* at 20. GER asserts that here, unlike in *Gaffer*, the competing provisions are not on equal footing, as they are in separate parts of the Lease, and subject to a clause addressing conflicts between those separate parts. *Id.*

Siltstone similarly argues that where, as here, the Lease arbitration clause conflicts with the choice of law/forum clause in the Addendum, the language of the Addendum controls. Siltstone's Brief at 8-9. Siltstone distinguishes our decision in *Gaffer*. In *Gaffer*, Siltstone argues, the

competing provisions were of equal standing, whereas the Lease in this case expressly stated that conflicting provisions of the Addendum supersede those in the Lease. *Id.* at 20.

We observe that in *Gaffer*, upon which Appellant relies, the parties' contract (Agreement) included the following arbitration provision:

ARTICLE 19

ARBITRATION

**Any dispute between the parties to this Agreement will be submitted for decision of a board of arbitration** composed of two arbitrators and an umpire, meeting in Farmington, CT, unless otherwise agreed to by us and you.

*Gaffer*, 936 A.2d at 1111 (emphasis added; citation omitted). However, the same contract also included a "service of suit" provision, which provided the following:

ARTICLE 17

SERVICE OF SUIT

This Article applies only to a reinsurer domiciled outside the United States of America ….

**It is agreed that in the event of** [**Gaffer's**] <u>**failure to pay any amount**</u> **claimed to be due hereunder**, [**Gaffer**] **at** [**Discover Reinsurance Co.'s** [**(Discover)**] **request, will submit to the jurisdiction of a court of competent jurisdiction within the United States**. Nothing in the Article constitutes or should be understood to constitute a waiver of [Gaffer's] rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States district court or to seek a transfer of a case to another court as determined by the laws of the United States or of any state in the United States.

It is further agreed that service of process in such suit may be made upon Gaffer …, … and that in any suit instituted against [Gaffer] upon this Agreement, you will abide by the final decision of such court or of an appellate court in the event of an appeal.

***Id.*** at 1112 (citation omitted; original emphasis omitted; emphasis added).

The Court interpreted the interplay between the lease provisions as

follows:

Article 19 of the Agreement constitutes a very broad arbitration provision[:] "Any dispute … will be submitted for decision of a board of arbitration … unless otherwise agreed to by us and you." (Agreement, Article 19, p.14). The verb is mandatory -- "will be submitted" -- and is qualified only by one clause allowing for an alternative to mandatory arbitration only upon mutual agreement. **Thus, by the plain and unambiguous text of this provision, the parties agreed to broad arbitration and expressly provided that mutual agreement would be required to avoid the mandate to arbitrate their disputes**.

However, in Gaffer's view, this plain meaning of the arbitration provision has been eviscerated by the inclusion of the service of suit provision in the Agreement. Gaffer focuses on the limiting clause in the arbitration provision – "unless otherwise agreed to by [Discover] and [Gaffer]" – and insists that by incorporating the service of suit provision into the Agreement, the parties did "otherwise agree" to abandon arbitration as the mandatory mechanism for resolving disputes. **Gaffer's interpretation diminishes the force of the arbitration provision from mandating arbitration, unless both parties agree, to merely permitting arbitration, so long as both parties agree to arbitrate.**

We cannot accept Gaffer's reading of the Agreement because it violates a basic principle of contract interpretation: consider the contract as a whole and give effect to every provision if possible. **Gaffer's reading renders the arbitration provision purposeless, meaningless, and superfluous. There is no logical need for a provision that merely allows the parties to agree to arbitrate, as nothing in the Agreement remotely implies that the parties could not agree to do so.** The parties could mutually agree to arbitrate a dispute just as easily in the

absence as in the presence of any such provision. Thus, there is no logical or rational explanation for a contractual provision that has the meaning that Gaffer here proposes for the arbitration provision.

… [T]he service of suit provision is not rendered meaningless if the arbitration provision is interpreted as a broad mandate to settle disputes by arbitration. The service of suit provision is also a consent to jurisdiction provision, and it requires Gaffer, as a foreign corporation, to "submit to the jurisdiction of a court of competent jurisdiction within the United States," in the event that Gaffer fails to pay an amount claimed by Discover under the Agreement. (Agreement, Article 17, p.13). In the very next sentence, the service of suit provision states that "[n]othing in the Article [*i.e.*, the service of suit Article,] constitutes or should be understood to constitute a waiver of [Gaffer's] rights to commence an action in any court of competent jurisdiction in the United States …." (Agreement, Article 17, p.13). **These provisions are entirely compatible with the arbitration provision when one recognizes that mandating arbitration as the mechanism for resolving disputes does not eliminate the possibility that the parties may in addition rely on the courts in some situations, *e.g.*, to file actions to compel or enforce arbitration.** In addition, under the plain meaning of the arbitration provision discussed above, if both parties mutually agree not to arbitrate a dispute, a remaining option is to resolve the dispute in court.

There is no inherent conflict or inconsistency between the service of suit provision and the arbitration provision. Both can – and therefore, under the principles of contract interpretation, should – be given full and logical effect. We do not perceive any need to eviscerate the arbitration provision in order to give effect to the directives of the service of suit provision.

*Id.* at 114-15 (emphases added; original emphasis omitted).

The Court continued,

Gaffer focuses on the third sentence of the service of suit provision, which provides in relevant part the following: "Nothing in the [service of suit] Article constitutes … a waiver of [Gaffer's] rights to commence an action in any court of competent jurisdiction in the United States …." (Agreement, Article 17, p.13).

- 21 -

> **Gaffer insists that this sentence confers upon it the right to disregard the arbitration provision and seek judicial resolution of any dispute with Discover. We disagree. By the plain meaning of this sentence, no rights are conferred upon Gaffer or anyone else; the sentence merely addresses waiver of rights**. The plain meaning of the sentence is unambiguous: by agreeing to the service of suit article, which encompasses consent to jurisdiction and service of process, Gaffer did not waive any rights that it might have to initiate its own action in court. **The sentence does not address the scope or breadth of Gaffer's rights, and it does not even remotely imply that Gaffer's rights to sue cannot be limited by some other article in the Agreement, as indeed they are by the arbitration provision.** Gaffer's broad reading of the sentence to re-confer rights relinquished in the arbitration clause is inconsistent with the plain meaning of the text. Accordingly, we firmly reject Gaffer's view.
>
> We conclude that it is not only possible, but also most reasonable and logical to consider the Agreement as a consistent whole and give full effect to both the arbitration and the service of suit/consent to jurisdiction provisions.

*Id.* at 115-16 (emphasis added; original emphasis omitted).

In the instant case, the Lease's arbitration provision similarly mandates that "**any controversy or claim arising out of, or related to this Lease, or the breach** thereof shall be ascertained and settled by three (3) disinterested arbitrators." Lease (GER and Siltstone), 5/2/17, ¶ 7(b) (emphasis added). The Lease further provides that it "shall not terminate for any failure, default, breach, actions, or omissions (collectively, a "Failure") by Lessee until it shall have been determined by final <u>arbitrator's</u> order[.]" *Id.* ¶ c (emphasis added).

The Addendum (Exhibit A) to the Lease, however, grants a choice of forum to the lessor, should the lessor commence proceedings:

> **Lessor fully reserves the right to file a lawsuit in any federal or state court that has jurisdiction over the Parties <u>regarding any dispute related to this Lease</u>.**
>
> **If Lessor files any form of legal action** to enforce any express or implied obligation of this Lease and receives a favorable judgment from a panel or court of competent jurisdiction, then Lessee [(Appellant)] shall reimburse Lessor for all costs, fees, and expenses of such legal proceedings, including reasonable attorney's fees.

Lease (GER and Siltstone), 5/2/17, at 8, 15 (Addendum Ex. A) (emphasis added). This language is much broader than the "Service of Suit" provision at issue in *Gaffer*, which applied "in the event of [Gaffer's] failure to pay an amount claimed due hereunder[.]" *Gaffer*, 936 A.2d at 1112.

Even more significant, in the present case, the parties expressly agreed that where a Lease provision contradicts a provision in the Addendum, **the language of the Addendum controls**. Lease (GER and Siltstone), 5/2/17, at 8 (Addendum Ex. A). In *Gaffer*, we recognized that notwithstanding the favorable federal policy towards arbitration agreements,

> [the FAA] does not require parties to arbitrate when they have not agreed to do so. The purpose of Congress in 1925[, in passing the FAA,] was to make arbitration agreements as enforceable as other contracts, but not more so. Because the [FAA] is at bottom a policy guaranteeing the enforcement of private contractual arrangements, we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of an agreement. **While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, <u>or reach a result inconsistent with the plain text of the contract</u>, simply because the policy favoring arbitration is implicated.**

***Gaffer***, 936 A.2d at 1113-14 (emphasis added) (quoting ***E.E.O.C. v. Waffle House, Inc.***, 534 U.S. 279, 293-94 (2002) (internal citations and quotation marks omitted)).

In the instant case, the Lease provided that "[a]ny controversy or claim arising out of, or related to this Lease, or the breach thereof shall be ascertained and settled by three (3) disinterested arbitrators …." GER Lease, 5/2/17, at 3 ¶ 7(c) (emphases added); Siltstone Lease, 5/2/17, at 3 ¶ 7(c) (emphases added). Thus, the Lease provided that any controversy or claim arising out of the lease is subject to arbitration. The Addendum, by contrast, *reserved to lessors* (GER and Siltstone), the "the right to file a lawsuit in any federal or state court that has jurisdiction over the Parties regarding <u>any dispute related to this Lease</u>." Lease (GER and Siltstone), 5/2/17, at 15 (Addendum Ex. A) (emphasis added). By its plain language, the Addendum either conflicted with, or carved out an exception for, actions initiated by the lessor (GER or Siltstone). It is undisputed GER and Siltstone initiated the underlying actions in this case.

Unlike in ***Gaffer***, Appellant and the lessors (GER and Siltstone) agreed that the provisions of the Addendum would supersede any conflicting provisions in the Lease. ***Id.*** at 3. As our Supreme Court has long recognized, "parties have the right to make their own contract, and it is not the function of this Court to re-write it, or to give it a construction in conflict with the accepted and plain meaning of the language used." ***Amoco Oil Co. v.***

***Snyder***, 478 A.2d 795, 798 (Pa. 1984) (internal brackets and ellipses omitted); ***accord Gamesa Energy USA***, 217 A.3d at 1238.

The Addendum reserved to GER and Siltstone, as lessors, the choice of forum when they file suit. Where, as here, the lessors initiated suit, the Addendum granted them the choice to bring their action in the federal or state courts. Consequently, we discern no error by the trial court in dismissing Appellant's preliminary objections seeking to compel arbitration.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/20/2024